**PITTSBURGH BOARD OF PUBLIC EDUCATION, Appellant,**

v.

**PITTSBURGH FEDERATION OF TEACHERS.**

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2014.
Decided Dec. 17, 2014.
Reargument En Banc Denied
Jan. 28, 2015.

---

**6.** Because we find that willful misconduct was not established, we need not address Claimant's remaining, issues.

Gretchen K. Love, Pittsburgh, for appellant.

Stephen H. Jordan, Pittsburgh, for appellee.

BEFORE: BERNARD L. McGINLEY, Judge, and ANNE E. COVEY, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

The Pittsburgh Board of Public Education (Board) appeals from the March 17, 2014, order of the Court of Common Pleas of Allegheny County (trial court) that denied the Board's petition to vacate a grievance arbitration award. We affirm.

The Board is charged with operating the Pittsburgh Public School System (District), which includes grades kindergarten through 12, as well as the education of special needs students who have mental, physical, or psychological disabilities. The Pittsburgh Federation of Teachers (Union) is the bargaining representative for teachers employed by the Board.

The Board and the Union entered into a collective bargaining agreement (CBA), effective July 1, 2010, through June 30, 2015. In 2012, the Board laid off certain special education teachers out of system-seniority order.[1] The Board laid off particular teachers based on their failure to attain a "Highly Qualified Teacher" (HQT) designation, rather than on their seniority.[2]

---

1. System seniority refers to a teacher's total consecutive time teaching or working in the school system. (CBA, Article 31, ¶ 1.a.)

2. HQT is not a term found in the CBA, but is a certification required by state and federal law that applies to teachers of core academic subjects. The No Child Left Behind Act of

The Union filed a grievance, alleging that the Board violated the CBA when it failed to lay off the teachers in system-seniority order.

■ On February 15, 2012, Arbitrator Helen Witt (Arbitrator) issued an arbitration award (Award) determining that the Board violated the CBA when it furloughed teachers out of system-seniority order. On March 17, 2014, the Board petitioned the trial court to vacate the Award. The trial court denied the Board's petition and, thereafter, the Board appealed to this court.[3]

■ Before this court, the Board contends that the Arbitrator's Award did not draw its essence from the CBA. In determining whether an arbitrator's award draws its essence from the CBA, this court must determine if the issue, as properly defined, is within the terms of the CBA and, if so, whether the arbitrator's award was rationally derived from the CBA. *State System of Higher Education (Cheyney University) v. State College and University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405, 413 (1999). This "court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the [CBA]." *Id.*

Here, the issue, as properly defined, is within the terms of the CBA. The issue placed before the Arbitrator for resolution was whether the Board violated the CBA by furloughing teachers out of system-seniority order. Article 31 of the CBA, entitled "System–Wide Seniority and Layoff–Recall Provisions," states: "System seniority shall continue to be the sole applicable seniority criterion to be applied in any layoff of a teacher(s)." (CBA, Article 31, ¶ 2.) The Board furloughed a group of special education teachers based upon their failure to achieve HQT status, rather than upon their system-seniority order. This resulted in the retention of teachers with less seniority, while teachers with more seniority were furloughed. Because the CBA contains a provision detailing the order of teacher layoffs and recalls, the Arbitrator did not err in determining that the issue as stated was within the terms of the CBA and properly before the Arbitrator.

Next, because the issue, as properly defined, was within the terms of the CBA, we must determine whether the Award was rationally derived from the CBA. *See Cheyney University*, 743 A.2d at 413.

The Award was based on an interpretation of Article 31 of the CBA, the only provision of the CBA that addresses furlough and recall. The Arbitrator determined that the language of Article 31 of the CBA was clear and unambiguous in regard to furlough procedures. The CBA provides that "[s]ystem seniority shall continue to be the *sole* applicable seniority criterion to be applied in any layoff of a

2001 (NCLB Act) defines an HQT generally as an individual who holds a bachelor's degree, has attained full state certification or licensure, and has proven knowledge of each subject taught. 20 U.S.C. § 7801(23). "Core academic subjects" include "English, reading or language arts, mathematics, science, foreign languages, civics and government, economics, arts, history, and geography." 20 U.S.C. § 7801(11).

3. Our review of a challenge to a labor arbitration award under the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 30, *as amended*, 43 P.S. §§ 1101.101–1101.2301, is one of deference. *State System of Higher Education (Cheyney University) v. State College and University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405, 413 (1999). The arbitrator's award must be given great deference and must draw its essence from the CBA. *Id.*

teacher(s)." (CBA, Article 31, ¶ 2 at 32 (emphasis added).)

The Arbitrator determined that factors other than seniority, such as HQT, race or gender, or full-time or part-time service, cannot be considered when furloughing teachers. The Arbitrator recognized that the effect of the Board having furloughed teachers who were not HQTs was to reduce the percentage of teachers who have not complied with the HQT mandate. Further, the Arbitrator correctly determined that, based on the facts of this case, the District must find another means to accomplish that result, because the furlough of non-HQTs out of system-seniority order is not permissible under the CBA as a means of improving the District's adequate yearly progress (AYP). The Award met the second part of the essence test because it was rationally derived from the CBA.

▮ However, pursuant to section 703 of Act 195, even if the Award passes the essence test, it may still be reversed if it is found to be contrary to state or federal law. 43 P.S. § 1101.703.[4] The Board argues that the Award violates state and federal law because the Board is required to have a staff comprised solely of HQTs. The Board argues that the District is required by the No Child Left Behind Act of 2001 (NCLB Act),[5] the Individuals with Disabilities Education Act (IDEA Act),[6] and state certification requirements[7] to furlough more senior teachers who were not HQTs. We disagree.

The NCLB Act sets forth an accountability framework, AYP, and the consequences for school districts that fail to meet the requirements. 20 U.S.C. § 6311(b)(2)(B). The NCLB Act requires school districts receiving federal funds under Title I to develop and submit a plan that meets the mandates of the NCLB Act, including the attainment of a staff comprised solely of HQTs.[8] 20 U.S.C. §§ 6311(a)(1), 6319(a)(1)-(a)(3).[9] School

4. Section 703 of Act 195 states that parties to a CBA:

shall not effect or implement a provision in a [CBA] if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters. 43 P.S. § 1101.703.

5. 20 U.S.C. §§ 6301–7941.

6. 20 U.S.C. §§ 1400–1487. The IDEA Act requires that special education teachers at the elementary school, middle school, or secondary school level be HQTs by the deadline set forth in the NCLB Act. 20 U.S.C. § 1412(a)(14)(C).

7. Section 403.4 of the Pennsylvania Code states that the NCLB Act requires that all school districts "ensure that, beginning with the 2002–03 school year, all newly hired teachers supported with Title I funds are [HQTs]." 22 Pa.Code § 403.4(a)(1). Further, the NCLB Act requires "all teachers teaching

in core academic subjects within the state [to be HQTs] by the end of the 2005–2006 school year." 22 Pa.Code § 403.4(a)(2).

8. The District receives federal funds under both Title I and Title II, and is subject to all of the requirements set forth in the NCLB Act.

9. Pursuant to the NCLB Act, an educational agency receiving assistance "shall ensure that all teachers *hired after such day* and teaching in a program supported with funds under this part are highly qualified." 20 U.S.C. § 6319(a)(1) (emphasis added). The state educational agency that receives assistance under the NCLB Act must "develop a plan to ensure that all teachers teaching in core academic subjects within the State are highly qualified not later than the end of the 2005–2006 school year." 20 U.S.C. § 6319(a)(2). Further, an educational agency receiving assistance "shall develop a plan to ensure that all teachers teaching within the school district served by the local educational agency are [HQTs] not later than the end of the 2005–2006 school year." 20 U.S.C. § 6319(a)(3).

districts are required to report annually on their progress. A school district's AYP is determined by academic assessments of the students. 20 U.S.C. § 6311(b)(2)(B). Beginning in the 2002–03 school year, information on the quality of teachers and the percentage of classes being taught by HQTs was to be reported annually to the state. 20 U.S.C. § 6311(h)(4)(G).

However, a school district is not penalized under the NCLB Act until it fails to make AYP for three consecutive years. The record reveals that the District achieved AYP in the 2010–2011 school year, and, therefore, the 100% requirement deadline for having all HQTs was moved to the 2013–2014 school year. The Arbitrator found that:

> The District, while encouraging and cajoling its professional personnel who teach core content subjects, failed to achieve [AYP] for two successive years and was warned by the Pennsylvania Department of Education of the possible consequences should progress been (sic) inadequate for a third successive year. Fortunately AYP was achieved for school year 2010–2011 so the 100% goal has moved to school year 2013–14.

(Award, 2/15/12, at 3.) The District's decision to furlough special education teachers out of system-seniority order was premature because the 100% HQT requirement was not applicable or enforceable.[10] The Arbitrator stated as follows:

> While the District cannot succeed in its argument that factors other than system seniority, particularly achievement of the [HQT] designation, properly may be considered when determining who shall be furloughed, it is correct that a real effort must be made to comply with the law that mandates that 100% of teachers, including special education teachers ... complete the requirements.... It is clear from a careful reading of the rules and regulations pertaining to the law that the list of possible penalties for non-compliance by teachers does not include the forfeiture of teachers' seniority rights. Furloughs, which are expressly referenced in Article 31, are governed solely by seniority and must be carried out in accordance with seniority which is defined solely in terms of time.

(Award, at 8.) The Arbitrator considered the Board's evidence that the 100% HQT designation requirement was postponed to the end of the 2013–2014 school year and determined that employing non-HQTs at the conclusion of the 2011–2012 school year was not in violation of the NCLB Act.[11] We find no error.[12]

■■■■■ Finally, the Board argues that the trial court erred in finding that the Award was consistent with public policy. The court recognizes that an arbitrator's award that meets the essence test will not be enforced if it violates an explicit public policy. *Philadelphia Housing Authority v. American Federation of State, County and Municipal Employees*, 617 Pa. 69, 52 A.3d 1117, 1121 (2012). Such public policy

---

10. We note that on August 20, 2013, the United States Department of Education approved Pennsylvania's request to waive the requirements of the NCLB Act. The waiver eliminates the AYP measure and replaces it with an alternate accountability system for the 2013–2014 and 2014–2015 school years.

11. We note that the extension of the time would allow the District more time to train the teachers with seniority that are not HQTs to achieve HQT status.

12. We note that the CBA was effective July 1, 2010, well after the NCLB Act came into effect. Therefore, the Board was well aware of the provisions of the NCLB Act at the time it entered into the CBA.

must be well-defined, dominant, and " 'ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." ' " *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 595 Pa. 648, 939 A.2d 855, 863 (2007) (citations omitted). An arbitrator's award may be vacated if the award "poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator." *Slippery Rock University of Pennsylvania v. Association of Pennsylvania State College and University Faculty*, 71 A.3d 353, 364 (Pa.Cmwlth.), *appeal denied*, —— Pa. ——, 83 A.3d 169 (2013) (citation omitted).

Here, the Board argues that the Award violated public policy by preventing the District from performing its statutory duty to ensure that HQTs educate the most vulnerable subset of the District's students, those who require additional services because of a medical or mental health diagnosis. This public policy requires the District to consider whether a teacher is an HQT when staffing special education classrooms.

The NCLB Act's purpose "is to ensure that all children have a fair, equal, and significant opportunity to obtain a high-quality education and reach, at a minimum, proficiency on challenging State academic achievement standards and state academic assessments." 20 U.S.C. § 6301. Similarly, the IDEA Act's purpose "is to ensure that all children with disabilities" have a public education emphasizing special education "to meet their unique needs and prepare them" for the future. 20 U.S.C. § 1400(d). Thus, there is a well-defined and dominant public policy to provide all children a high-quality education.

The Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702, governs the duty of local school districts to hire qualified teachers. Section 1106 of the School Code provides that "[t]he board of school directors in every school district shall employ the necessary qualified professional employes, substitutes and temporary professional employes to keep the public schools open in their respective districts in compliance with the provisions of this act." 24 P.S. § 11–1106. Section 2(a) of the Professional Educator Discipline Act[13] requires that "[n]o educator shall be employed by a school entity in the Commonwealth unless he has met the certification requirements which are applicable to the position in the institution in which he is employed as established by the State Board ... or the department." 24 P.S. § 2070.2(a). The term "highly qualified" does not appear in the Public School Code. Because neither the law nor public policy required that a teacher have the HQT designation at the time of the furloughs, the Board's argument fails.

In conclusion, the issue before the Arbitrator, as properly defined, was within the terms of the CBA, and the Award was rationally derived from the CBA. Thus, the Award drew its essence from the CBA. Further, the Award did not violate the law or a well-defined, dominant public policy because there was no requirement that all teachers be HQTs during the time of the furloughs.

Accordingly, we affirm.

---

**13.** Act of December 12, 1973, P.L. 397, *as amended*, editorially renumbered from 24 P.S. § 12–1252 in 1994, 24 P.S. § 2070.2.

## ORDER

AND NOW, this 17th day of December, 2014, we hereby affirm the March 17, 2014, order of the Court of Common Pleas of Allegheny County.